# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EDWARD MENDEZ and HORTENCIA GARCIA,<br><br>Plaintiffs,<br><br>v.<br><br>DISTRICT COUNCIL 37, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; LOCAL 983, AMERICAN FEDERATION OF STATE, COUNTY AND MUNICIPAL EMPLOYEES, AFL-CIO; CITY OF NEW YORK,<br><br>Defendants. | **Case No. 1:21-cv-2295**<br><br>(Hon. _____)<br><br><br>**COMPLAINT** |

AND NOW come Plaintiffs Edward Mendez and Hortencia Garcia, by and through their undersigned attorneys, and state the following claims for relief against Defendants District Council 37, American Federation of State, County and Municipal Employees, AFL-CIO ("District Council 37"); Local 983, American Federation of State, County and Municipal Employees, AFL-CIO ("Local 983")[1]; and the City of New York:

## SUMMARY OF THE CASE

1.      This is a civil rights action pursuant to 42 U.S.C. § 1983 for injunctive, declaratory, and monetary relief to redress and to prevent the ongoing deprivation of rights, privileges, and/or immunities under the First and Fourteenth Amendments to the United States Constitution caused by state statutes and Defendants' contracts, policies, and practices that impair the ability of public employee bargaining unit members of Defendant Unions to end all association with Defendant Unions as their exclusive representative and to resign their memberships in Defendant Unions and/or end financial support of Defendant Unions.

---

[1] District Council 37 and Local 983 are jointly referred to herein as "Defendant Unions."

2. Defendants have acted under the color of state law, specifically the Public Employees' Fair Employment Act, N.Y. Civ. Serv. Law, Article 14 (the "Taylor Law"), and/or other state laws and are therefore state actors.

3. The United States Supreme Court held that the First Amendment to the Constitution of the United States prohibits the government and unions from compelling nonmember public employees to pay dues or fees to a union as a condition of employment. *See Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2486 (2018).

4. As such, Defendants are violating Plaintiffs' constitutional rights by deducting payments of union dues and/or fees from their wages as a condition of Plaintiffs' employment.

5. Pursuant to the Taylor Law and agreements between Defendant Unions and Defendant City of New York, setting forth terms and conditions of employment for certain public employees, including Plaintiffs, Defendants have deprived, are depriving, and are threatening to continue to deprive Plaintiffs of their constitutional rights.

6. Specifically, Defendant Unions, acting in concert with the City of New York, require Plaintiffs to remain members of Defendant Unions and/or to financially support Defendant Unions by restricting or ignoring their right to resign from membership in Defendant Unions and end all aspects of union membership, all under the color of state law.

7. Despite Plaintiffs' resignations from Defendant Unions, Defendants continue to deduct and/or receive union dues and/or fees from Plaintiffs' wages.

8. Further, New York state law and Defendants' policies and practices authorize Defendants to require, and Defendants have so required, Plaintiffs to associate with Defendant Unions and to accept their status as the exclusive representative for Plaintiffs.

9. This deprives Plaintiffs of their right to petition the government on their own behalf or through a representative of their choosing. Designation of Defendant Unions as Plaintiffs'

exclusive representative violates Plaintiffs' speech, petitioning, and associational rights under the First Amendment.

10.     Because Defendants continue to deduct and/or receive union dues and/or fees from Plaintiffs' wages in violation of Plaintiffs' constitutional rights, and because Plaintiffs are forced to accept Defendant Unions as their exclusive bargaining representative for collective bargaining purposes, Plaintiffs seek declaratory and injunctive relief against all Defendants, as well as compensatory and nominal damages, and attorneys' fees and costs pursuant to 42 U.S.C. § 1988.

## JURISDICTION AND VENUE

11.     This action arises under the Constitution and laws of the United States of America. It also arises under the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983 to redress the deprivation, under color of state law, of Plaintiffs' rights, privileges, and immunities under the Constitution of the United States, particularly the First and Fourteenth Amendments thereto.

12.     The Court has jurisdiction over Plaintiffs' claims pursuant to 28 U.S.C. § 1331—because their claims arise under the Constitution of the United States—and 28 U.S.C. § 1343—because Plaintiffs seek relief under 42 U.S.C. § 1983.

13.     This action is an actual controversy in which Plaintiffs seek declarations of their rights under the United States Constitution. Pursuant to 28 U.S.C. §§ 2201 and 2202, this Court may declare plaintiffs' rights and grant further necessary and proper relief, including injunctive relief, pursuant to Federal Rule of Civil Procedure 65.

14.     Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b) because Defendant Unions are domiciled in and operate or do significant business in this judicial district. Additionally, a substantial part of the events giving rise to this action occurred in this judicial district.

## PARTIES

15.     Plaintiff Edward Mendez is a "public employee" within the meaning of the Taylor Law, *see* N.Y. Civ. Serv. Law § 201.7 (McKinney 2020). He is employed by the City of New York in the New York City Police Department ("NYPD") as a Level 4 Traffic Enforcement Agent. Mr. Mendez is represented by Defendant Unions exclusively for purposes of collective bargaining. Mr. Mendez was a member of Defendant Unions, but has not been a member since the date of his resignation letter.

16.     Plaintiff Hortencia Garcia is a "public employee" within the meaning of the Taylor Law, *see* N.Y. Civ. Serv. Law § 201.7. She is employed by the City of New York in the NYPD as a Level 3 Traffic Enforcement Agent. Ms. Garcia is represented by Defendant Unions exclusively for purposes of collective bargaining. Ms. Garcia was a member of Defendant Unions, but has not been a member since the date of her resignation letter.

17.     Defendant District Council 37 is an "employee organization" within the meaning of the Taylor Law, *see* N.Y. Civ. Serv. Law § 201.5. District Council 37, and/or its affiliates, represents City of New York employees, including Plaintiffs, exclusively for purposes of collective bargaining with the City of New York. District Council 37 maintains a place of business at 125 Barclay Street, New York, New York 10007 and conducts its business and operations in the Southern District of New York.

18.     Defendant Local 983 is an "employee organization" within the meaning of the Taylor Law, *see* N.Y. Civ. Serv. Law § 201.5. Local 983, and/or its affiliates, represents City of New York employees, including Plaintiffs, exclusively for purposes of collective bargaining with the City of New York. Local 983 maintains a place of business at 125 Barclay Street, New York, New York 10007 and conducts its business and operations in the Southern District of New York.

19.    Defendant City of New York is a "government" or "public employer" within the meaning of the Taylor Law, *see* N.Y. Civ. Serv. Law § 201.6. As such, the City of New York issues wages to its employees, including Plaintiffs, and processes payroll deductions of union dues and/or fees pursuant to the requirements of the Taylor Law. The City recognizes Defendant Unions as Plaintiffs' exclusive representative, pursuant to the memorandum of understanding ("MOA") and collective bargaining agreement ("CBA") between the City of New York and Defendant Unions, and has entered into those agreements with Defendant Unions. The City of New York also, through its Office of Collective Bargaining, by its Board of Certification, determines appropriate bargaining units and certifies unions as the exclusive collective bargaining representative of a bargaining unit. The City of New York's Office of Collective Bargaining, through its Board of Certification, has recognized Defendant District Council 37, jointly with two other unions, as the exclusive representative for Plaintiffs' bargaining unit, pursuant to Certification No. 15-14.

## FACTUAL ALLEGATIONS

### State Law and Defendants' Policies on Union Representation, Membership, and Dues

20.    Acting in concert under color of state law, the City of New York and Defendant Unions have entered into the MOA, CBA, and other agreements that control the terms and conditions of Plaintiffs' employment.

21.    Pursuant to the CBA and/or other agreements between Defendants, the City of New York, through its Office of Payroll Administration ("OPA"), oversees the deduction of union dues and/or fees from Plaintiffs' wages for Defendant Unions, and transmits them to Defendant Unions.

22.    The MOA between the City of New York and Defendant Unions recognizes Defendant Unions as the exclusive representative of those holding Plaintiffs' civil service title of Traffic Enforcement Agent at their respective levels.

23.     State law requires Plaintiffs' employer, the City of New York (a public employer), to extend to Defendant Unions the right to dues deductions from the wages of its employees.

24.     Specifically, the Taylor Law provides that "[a] public employer shall extend to an employee organization certified or recognized pursuant to this article the following rights: . . . (b) to membership dues deduction, upon presentation of dues deduction authorization cards signed by individual employees. . . ." N.Y. Civ. Serv. Law § 208.1.

25.     The Taylor Law also provides that "[t]he right to such membership dues deduction shall remain in full force and effect until: (i) an individual employee revokes membership in the employee organization in writing in accordance with the terms of the signed authorization." N.Y. Civ. Serv. Law § 208.1.

26.     Upon information and belief, the City of New York requires its employees to effectuate their union membership resignation and/or revocation of consent to union dues deductions through Defendant Unions.

27.     The City of New York denies its employees' requests to resign their union membership and/or end union dues and/or fees deductions from their wages without authorization from Defendant Unions.

28.     Absent this authorization from Defendant Unions, the City of New York will not cease processing union dues and/or fees deductions even if presented with a union membership resignation letter and revocation of consent to dues deductions directly from a City of New York employee.

**Plaintiff Mendez Chooses to End His Union Membership**

29.     Mr. Mendez became a member of Defendant Unions after beginning his employment with the City of New York's police department as a Traffic Enforcement Officer in or about 1987.

30.     Mr. Mendez resigned from Defendant Unions and sought to end union dues deductions via letters dated July 13, 2020, to District Council 37 and the OPA.

31.     In or about October 2020, Marvin Robbins, an agent and/or official of Defendant Unions, informed Mr. Mendez that Defendant Unions would not accept his union membership resignation and revocation of authorization to deduct union dues.

32.     Mr. Robbins informed Mr. Mendez that Defendant Unions did not like the way in which Mr. Mendez had resigned his union membership and would not accept his resignation.

33.     Mr. Robbins instructed Mr. Mendez to write another resignation letter, get it notarized, and to personally deliver the letter to him, in order to resign from Defendant Unions and to end the deduction of union dues from his wages.

34.     Additionally, another agent or official of Local 983, Farris Coley, informed Mr. Mendez that he had heard from Joseph Puleo, President of Local 983 and a member of District Council 37's Executive Board, that Mr. Mendez had resigned.

35.     Mr. Coley informed Mr. Mendez that Mr. Puleo wanted Mr. Mendez to visit him in person to explain his decision to resign from Defendant Unions.

36.     Mr. Mendez's written resignation from Defendant Unions requested that Defendant Unions and the OPA provide him with a copy of any document or agreement that Mr. Mendez signed that Defendant Unions or the OPA believed to be the basis for refusing to allow Mr. Mendez to resign his membership in Defendant Unions and/or revoke his union dues deduction authorization.

37.     No Defendant has provided Mr. Mendez with a copy of any union membership agreement or dues deduction authorization allegedly signed by Mr. Mendez.

38.     Since on or about July 13, 2020, the City of New York has continued to deduct purported union dues and/or fees from Mr. Mendez's wages.

39.    Since on or about July 13, 2020, the City of New York has continued to transmit purported union dues and/or fees deducted from Mr. Mendez's wages to Union Defendants.

40.    Since on or about July 13, 2020, Defendant Unions have continued to consider Mr. Mendez to be a member of Defendant Unions.

41.    Since on or about July 13, 2020, Defendant Unions have continued to take and/or accept purported union dues and/or fees from Mr. Mendez's wages.

42.    Pursuant to its policies and practices, the City of New York refuses to end the deductions of union dues and/or fees from Mr. Mendez's wages, despite receiving a copy of Mr. Mendez's July 13, 2020 letter in which he resigned from Defendant Unions in July 2020.

43.    Pursuant to its policies and practices, the City of New York refuses to end the deductions of union dues and/or fees from Mr. Mendez's wages, despite receiving a copy of Mr. Mendez's July 13, 2020 letter revoking any union dues deduction authorization he may have previously signed.

44.    Acting in concert under color of state law, Defendants have taken and continue to take and/or have accepted and continue to accept purported union dues and/or fees from Mr. Mendez's wages as a condition of employment pursuant to state law, the CBA and other agreements between them, and/or their joint policies and practices.

45.    Defendants have taken and continue to take and have accepted and continue to accept purported union dues and/or fees from Mr. Mendez's wages even though the seizure of purported union dues and/or fees from his wages is against Mr. Mendez's will and without his consent.

46.    Mr. Mendez objects to the compelled association with and financial subsidization of any activities of Defendant Unions for any purpose.

**Plaintiff Garcia Chooses to End Her Union Membership**

8

47.     Ms. Garcia became a member of Defendant Unions after beginning her employment with the City of New York's police department as a Traffic Enforcement Officer in or about 2000.

48.     Ms. Garcia resigned from Defendant Unions and revoked her union dues deductions authorization via letters dated November 17, 2020, to Defendant District Council 37 and OPA.

49.     Upon information and belief, acting upon the policy and practice of the City of New York, OPA's Union Services Unit responded to Ms. Garcia's aforementioned November 17, 2020 letter via letter dated November 27, 2020, and informed Ms. Garcia that OPA "requires a valid written authorization from an employee's Union in order to revoke the employee's dues deductions."

50.     OPA also informed Ms. Garcia that it would not cease processing union dues deductions from her wages because it had not received a "valid written authorization" to do so from District Council 37.

51.     OPA stated that "for informational purposes, a copy of your request will be forwarded to the Union."

52.     Defendant Unions never contacted Ms. Garcia regarding her November 17, 2020 resignation letter.

53.     Ms. Garcia's November 17, 2020 written resignation from membership in Defendant Unions requested that Defendant Unions and the OPA provide her with a copy of anything that she signed that Defendant Unions or the OPA believed to be the basis for refusing to allow Ms. Garcia to resign her membership in Defendant Unions and/or revoke her union dues deductions authorization.

54.     No Defendant has provided Ms. Garcia with a copy of any membership agreement or dues deduction authorization allegedly signed by Ms. Garcia.

55.    Since on or about November 17, 2020, the City of New York has continued to deduct purported union dues and/or fees from Ms. Garcia's wages.

56.    Since on or about November 17, 2020, the City of New York has continued to transmit purported union dues and/or fees deducted from Ms. Garcia's wages to Union Defendants.

57.    Since on or about November 17, 2020, Defendant Unions have continued to consider Ms. Garcia to be a member of Defendant Unions.

58.    Since on or about November 17, 2020, Defendant Unions have continued to take and/or accept purported union dues and/or fees from Ms. Garcia's wages.

59.    Pursuant to its policies and practices, the City of New York refuses to end the deductions of union dues and/or fees from Ms. Garcia's wages, despite receiving a copy of Ms. Garcia's November 17, 2020 letter in which she resigned from Defendant Unions in November 2020.

60.    Pursuant to its policies and practices, the City of New York refuses to end the deductions of union dues and/or fees from Ms. Garcia's wages, despite receiving a copy of Ms. Garcia's November 17, 2020 letter revoking any union dues deduction authorization she may have previously signed.

61.    Acting in concert under color of state law, Defendants have taken and continue to take and/or have accepted and continue to accept purported union dues and/or fees from Ms. Garcia's wages as a condition of employment pursuant to state law, the CBA and other agreements between them, and/or their joint policies and practices.

62.    Defendants have taken and continue to take and have accepted and continue to accept purported union dues and/or fees from Ms. Garcia's wages even though the seizure of purported union dues and/or fees from her wages is against Ms. Garcia's will and without her consent.

63.     Ms. Garcia objects to the compelled association with and financial subsidization of any activities of Defendant Unions for any purpose.

### Defendant Unions Are Plaintiffs' Exclusive Representative

64.     Under New York law, a union may become the exclusive bargaining representative for public employees for collective bargaining purposes by recognition or certification. A union so designated then exclusively bargains on wages, hours, and terms and conditions of employment on behalf of all the employees in the bargaining unit it represents. N.Y. Civ. Serv. Law § 204.

65.     When an employee organization has been certified or recognized as the exclusive representative, the public employer is required to negotiate with the employee organization regarding the terms and conditions of employment for the public employees the employee organization exclusively represents. N.Y. Civ. Serv. Law § 204.2. This requirement on the public employer includes a "mutual obligation" to meet at reasonable times and confer in good faith. N.Y. Civ. Serv. Law § 204.3.

66.     The Taylor Law limits the duties an exclusive representative owes to the employees in a bargaining unit it represents who choose not to be union members and authorizes the exclusive representative to treat nonmembers differently than members of the union.

67.     Specifically, the Taylor Law provides that "[n]otwithstanding any law, rule or regulation to the contrary, an employee organization's duty of fair representation to a public employee it represents but who is not a member of the employee organization shall be limited to the negotiation or enforcement of the terms of an agreement with the public employer." N.Y. Civ. Serv. Law § 209-a(2).

68.     In addition, the Taylor Law specifically provides,

No provision of this article shall be construed to require an employee organization to provide representation to a non-member:

(i) during questioning by the employer,

(ii) in statutory or administrative proceedings or to enforce statutory or regulatory rights, or
(iii) in any stage of a grievance, arbitration or other contractual process concerning the evaluation or discipline of a public employee where the non-member is permitted to proceed without the employee organization and be represented by his or her own advocate.

N.Y. Civ. Serv. Law § 209-a(2).

69.    Finally, the Taylor Law also provides: "Nor shall any provision of this article prohibit an employee organization from providing legal, economic or job-related services or benefits beyond those provided in the agreement with a public employer only to its members." N.Y. Civ. Serv. Law § 209-a(2).

70.    Pursuant to Certification No. 15-14, the City of New York, by and through its Office of Collective Bargaining, has recognized Defendant District Council 37, together with two other unions, as the exclusive representative for Plaintiffs' bargaining unit, the Traffic Enforcement Bargaining Unit.

71.    Pursuant to CBA and MOU, Defendant Unions are Plaintiffs' exclusive representatives for purposes of collective bargaining with Plaintiffs' employer, the City of New York.

72.    The Traffic Enforcement Bargaining Unit authorized Defendant Unions to enter into the agreements with the City of New York that govern the terms and conditions of Plaintiffs' employment.

73.    The City of New York did enter into agreements with Defendant Unions that govern the terms and conditions of Plaintiffs' employment.

74.    Despite Plaintiffs' resignations from Defendant Unions, those unions remain their exclusive representative for collective bargaining purposes.

75.    Pursuant to state law, the duty of fair representation that Defendant Unions owe to Plaintiffs is limited to "the negotiation or enforcement of the terms of an agreement with the public

employer," and Defendant Unions have no duty to represent Plaintiffs in any of the situations designated in Section 209-a of the Taylor Law.

76. Plaintiffs believe that Defendant Unions do not represent their interests, beliefs, or needs related to the terms and conditions of their employment and in interactions with their employer.

77. Plaintiffs believe that their inclusion in their bargaining unit is a disservice and causes them and other Traffic Enforcement Agents to be disadvantaged in their terms and conditions of employment.

78. Plaintiffs disagree with Defendant Unions on many issues, including those related to the terms and conditions of employment and to Plaintiffs' employment experiences during the coronavirus pandemic.

79. Plaintiffs believe Defendant Unions have failed to secure a collective bargaining agreement regarding their terms and conditions of employment since the creation of the Traffic Enforcement Bargaining Unit in 2014.

80. Due to Defendant Unions' status as Plaintiffs' exclusive representative, Plaintiffs have no meaningful avenue to represent themselves in connection with their terms and conditions of employment with their employer or to associate with a different representative of their choosing.

81. Due to Defendant Unions' exclusive and statutory entitlement to meet and confer with the City of New York regarding the terms and conditions of Plaintiffs' employment, Plaintiffs have no avenue to exercise the meet and confer rights Defendant Unions possess.

82. Plaintiffs do not want to be associated with Defendant Unions in any way, including as their exclusive representative or through forced financial support of Defendant Unions or their affiliates.

## CLAIMS FOR RELIEF

### COUNT ONE
(Violation of 42 U.S.C. § 1983 and the
First and Fourteenth Amendments of the United States Constitution)

83.     Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

84.     The First Amendment to the Constitution of the United States protects associational, free speech, and free choice rights, and the Fourteenth Amendment to the Constitution of the United States incorporates the protections of the First Amendment against the States.

85.     The First Amendment requires that "[n]either an agency fee nor any other payment to the union may be deducted from a nonmember's wages, nor may any other attempt be made to collect such a payment, unless the employee affirmatively consents to pay." *Janus*, 138 S. Ct. at 2486.

86.     There is no state interest, compelling or otherwise, justifying the state's requirement that individuals remain members of or provide financial support to a private organization, including a labor organization, for any length of time.

87.     Sections 201 and 208 of the Taylor Law, on their face and/or as applied by Defendants, authorize and/or require Defendants, by and through their agents and/or officials, to force employees to remain union members and/or full dues payers despite their expressed intention to resign union membership and end financial support of a union. This is a violation of Plaintiffs' First Amendment rights.

88.     Sections 201 and 208 of the Taylor Law, facially and/or as applied by Defendants, permit Defendants to require that employees maintain unwilling association with and financial support of Defendant Unions and are, therefore, unconstitutional. This forced membership requirement impinges on Plaintiffs' rights to free association, self-organization, assembly, petition,

14

and freedoms of speech, thought, and conscience, as guaranteed by the First and Fourteenth Amendments of the Constitution of the United States.

89.     The Taylor Law, on its face and/or as applied by Defendants, authorizes Defendants to violate Plaintiffs' constitutional rights by withholding union dues and/or fees from them without their consent, in violation of the Constitution of the United States as explained in *Janus*, 138 S. Ct. 2448.

90.     Because Plaintiffs have resigned their memberships in Defendant Unions, the First Amendment protects them as nonmember public employees from having Defendants deduct nonconsensual financial support for Defendant Unions from Plaintiffs' wages as a condition of employment.

91.     A valid waiver of constitutional rights requires clear and compelling evidence that the putative waiver was voluntary, knowing, and intelligent and that enforcement of the waiver is not against public policy. Defendants bear the burden of proving that these criteria are satisfied.

92.     Plaintiffs have not waived their constitutional rights as nonmembers not to provide financial support via payroll deduction or other method to Defendant Unions.

93.     Defendants, by deducting and collecting financial support for Defendant Unions from Plaintiffs' wages via payroll deductions despite Plaintiffs' resignations from union membership and revocations of consent to union dues deductions, pursuant to Defendants' joint policies and practices, and without clear and compelling evidence that Plaintiffs have waived their constitutional rights, are depriving Plaintiffs of their First Amendment rights to free speech and association, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

94.     As a direct result of Defendants' actions under the Taylor Law, any agreements between the City of New York and Defendant Unions, and/or Defendants' joint policies and practices, Plaintiffs:

  a.     have been prevented from exercising their rights and privileges to disassociate from and no longer support the agenda and expenses of a private organization with which they no longer agree and/or to which they no longer wish to belong as members;

  b.     have been deprived of their civil rights guaranteed to them under the statutes of the United States and have suffered monetary damages and other harm;

  c.     are in imminent danger of being deprived of their civil rights guaranteed under the Constitution of the United States and are in imminent danger of suffering monetary damages and other harm; and

  d.     are in imminent danger of suffering irreparable harm, damage, and injury inherent in the violation of First and Fourteenth Amendment rights, for which there is no adequate remedy at law.

95.     If not enjoined by this Court, Defendants and/or their agents and officials will continue to effect the deprivations and abridgments of Plaintiffs' constitutional rights, thereby causing irreparable harm, damage, and injury for which there is no adequate remedy at law.

## COUNT TWO
(Violation of 42 U.S.C. § 1983 and
the Fourteenth Amendment of the United States Constitution)

96.     Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

97.     The Fourteenth Amendment to the Constitution of the United States guarantees due process to citizens facing deprivation of liberty or property by state actors. *See Mathews v. Eldridge*, 424 U.S. 319, 348–49 (1976).

16

98.    Additionally, public-sector unions and public employers have a responsibility to provide procedures that minimize constitutional impingement inherent in compelled association and speech and to facilitate the protection of public employees' rights. *See Chi. Teachers Union, Local No. 1 v. Hudson*, 475 U.S. 292, 307 & n.20 (1986).

99.    Defendants have not implemented policies and procedures that are narrowly tailored to reduce the impingement on Plaintiffs' constitutional rights, including the constitutionally required procedures and disclosures regarding the use of union dues and/or fees taken from them as a condition of employment, as recognized in *Hudson*.

100.    Defendants have not provided Plaintiffs with notice of or a meaningful opportunity to object to the continued seizure of a portion of their wages via payroll deductions by Defendants or the use of their funds by Defendant Unions.

101.    Plaintiffs have never waived their due process rights, including their right not to subsidize the speech and activities of Defendant Unions.

102.    As a direct result of Defendants' concerted actions, taken pursuant to state law, the CBA, MOU and/or other agreements between Defendants, and their joint policies and practices, Plaintiffs:

a.    are being prevented from exercising their rights and privileges to no longer support the agenda, activities, speech, and expenses of a private organization which they object to supporting;

b.    are being deprived of their civil rights guaranteed to them under the Constitution of the United States and have suffered monetary damages and other harm; and

c.    are in imminent danger of suffering irreparable harm, damage, and injury inherent in the violation of First and Fourteenth Amendment rights, for which there is no adequate remedy at law.

103.    If not enjoined by this Court, Defendants and/or their agents and officials will continue to effect the aforementioned deprivations and abridgments of Plaintiffs' constitutional rights, thereby causing them to suffer irreparable harm.

### COUNT THREE
(Violation of 42 U.S.C. § 1983 and
the First Amendment of the United States Constitution)

104.    Plaintiffs re-allege and incorporate by reference all allegations contained in the foregoing paragraphs of this Complaint as if fully set forth herein.

105.    The First Amendment protects "[t]he right to eschew association for expressive purposes," *Janus*, 138 S. Ct. at 2463, because the "[f]reedom of association . . . plainly presupposes a freedom not to associate." *Roberts v. United States Jaycees*, 468 U.S. 609, 623 (1984).

106.    "[M]andatory associations are permissible only when they serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Knox v. SEIU*, 567 U.S. 298, 310 (2012).

107.    In the context of public-sector unions, the Supreme Court has recognized that "[d]esignating a union as the employees' exclusive representative substantially restricts the rights of individual employees. Among other things, this designation means that individual employees may not be represented by any agent other than the designated union; nor may individual employees negotiate directly with their employer." *Janus*, 138 S. Ct. at 2460.

108.    The duty of fair representation "is a necessary concomitant of the authority that a union seeks when it chooses to serve as the exclusive representative of all the employees in a unit." *Janus*, 138 S. Ct. at 2455.

109.    By designating, certifying, and/or recognizing Defendant Unions as the Plaintiffs' exclusive representative, New York law, the certification of the Office of Collective Bargaining, and

the MOA and CBA violate Plaintiffs' rights under the First and Fourteenth Amendments to the Constitution of the United States.

110.    Defendant Unions' status as exclusive representative compels Plaintiffs to associate with Defendant Unions.

111.    Defendant Unions' status as exclusive representative compels Plaintiffs to speak and to petition the government because it authorizes and requires Defendant Unions to speak for Plaintiffs.

112.    Defendant Unions' status as exclusive representative attributes Defendant Unions' speech and petition to Plaintiffs.

113.    Defendant Unions' status as exclusive representative restricts Plaintiffs' speech and petitioning.

114.    The Taylor Law limits the scope of the duty of fair representation that Defendant Unions owe to Plaintiffs as nonmembers of the unions.

115.    These limitations further abridge Plaintiffs' constitutional rights, removing protections for Plaintiffs in the context of the forced speech and association inherent in their exclusive representation by Defendant Unions.

116.    Plaintiffs' constitutional rights are further abridged because of the Taylor Law's authorization of only limited duties owed by the exclusive representative to nonmembers, as compared to members of the union.

117.    Plaintiffs have no adequate remedy at law.

118.    As a direct result of Defendants' concerted actions, taken pursuant to state law, the CBA, MOU and/or other agreements between Defendants, and their joint policies and practices, Plaintiffs:

a.    are being prevented from exercising their rights and privileges not to speak through, associate with or petition through a private organization;

b.    are being deprived of their civil rights guaranteed to them under the Constitution of the United States; and

c.    are in imminent danger of suffering irreparable harm, damage, and injury inherent in the violation of First and Fourteenth Amendment rights, for which there is no adequate remedy at law.

119.    If not enjoined by this Court, Defendants and/or their agents will continue to effect the aforementioned deprivations and abridgments of Plaintiffs' constitutional rights, thereby causing them to suffer irreparable harm.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that this Court order the following relief:

A.    **Declaratory:** A judgment based upon the actual, current, and *bona fide* controversy between the parties as to the legal relations among them, pursuant to 28 U.S.C. § 2201 and Federal Rule of Civil Procedure 57, declaring:

i.    that Defendants' actions in forcing Plaintiffs to remain members of Defendant Unions, and the Taylor Law provisions contained in N.Y. Civ. Serv. Law, Sections 201 and 208, to the extent they relate to, authorize, and/or require Defendants to do so, on their face and/or as applied, violate the First and Fourteenth Amendments of the United States Constitution;

ii.    that any taking of union dues and/or fees from Plaintiffs after their resignation of membership in Defendant Unions violates Plaintiffs' rights under the First and Fourteenth Amendments of the United States Constitution, and that any provisions of the Taylor Law, the CBA and/or MOU, other agreements between Defendants, and/or any

other purported authorizations that authorize or require such deductions of union dues and/or fees from Plaintiffs' wages are unconstitutional;

iii.    that the First and Fourteenth Amendments to the Constitution of the United States prevent Defendants from restricting Plaintiffs' right to resign from union membership at any time;

iv.    or, alternatively to i through iii, that the First and Fourteenth Amendments require Defendants to provide Plaintiffs with constitutionally adequate notice and a meaningful opportunity to object to the nonconsensual monies being seized from them by Defendants and the purposes for which the monies are used, including the notice and procedures required by *Hudson*; and

v.    that the provisions of New York law and Defendants' certification, recognition, and agreement, as well as any MOU or CBA provisions, that provide that Defendant Unions are the exclusive representative of Plaintiffs for purposes of collective bargaining with Plaintiffs' employer violate Plaintiffs' constitutional rights and are unconstitutional.

B.    **Injunctive:** A permanent injunction:

i.    enjoining Defendants, their officers, employees, agents, attorneys, and all others acting in concert with them, from:

a.    engaging in any of the activities listed in Part A above that the Court declares illegal;

b.    enforcing any provisions in the Taylor Law, the CBA or MOU, or other agreements between Defendants, Defendants' policies and practices, and/or any subsequent substantially similar provisions agreed to between Defendants, which require Plaintiffs to remain a member of Defendant

21

Unions for any duration of time beyond that which Plaintiffs wish to remain a member;

c.      recognizing Defendant Unions, or any other employee organization, as Plaintiffs' exclusive representative without their consent; and

d.      recognizing or acting with a lessened duty of fair representation to Plaintiffs as nonmembers, as compared to members of Defendant Unions.

ii.      requiring Defendants, their officers, employees, agents, attorneys, and all others acting in concert with them, to:

a.      recognize and honor Plaintiffs' request to resign from union membership, retroactive to the date of their respective resignations; and

b.      refund to Plaintiffs all union dues and/or fees deducted from their wages from the date of their respective resignations, plus interest thereon;

c.      or, alternatively, to provide constitutionally adequate notice and procedures regarding the payroll deductions of forced financial support of Defendant Unions from Plaintiffs' wages.

C.      **Monetary:** A judgment awarding Plaintiffs nominal and compensatory damages for the injuries sustained as a result of Defendants' unlawful interference with and deprivation of their constitutional and civil rights, including, but not limited to, the amount of union dues and/or fees deducted from their wages after their respective resignation dates, plus interest thereon, and such amounts as principles of justice and compensation warrant.

D.      **Attorneys' Fees and Costs:** A judgment awarding Plaintiffs costs and reasonable attorneys' fees under 42 U.S.C. § 1988; and

E.      **Other:** Such other and further relief as the Court may deem just and proper.

22

Respectfully submitted,

Dated: March 16, 2021

**s/ Tyler K. Patterson**
Tyler K. Patterson
NYS Attorney I.D. No. 5076930
Email: tkpatterson@fairnesscenter.org
Nathan J. McGrath*
Email: njmcgrath@fairnesscenter.org
Danielle R. Acker Susanj*
Email: drasusanj@fairnesscenter.org
THE FAIRNESS CENTER
500 North Third Street, Suite 600B
Harrisburg, Pennsylvania 17101
Telephone: 844.293.1001
Facsimile: 717.307.3424

*Attorneys for Plaintiffs*

*motions for admission *pro hac vice* to be filed